**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

JANUARY 29, 2026

~~Stgnc, C. J.~~
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 29, 2026

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| A BETTER RICHLAND, a political action committee, registered under laws of Washington State, | NO. 103715-5 |
| Petitioner, | EN BANC |
| v. | Filed: <u>January 29, 2026</u> |
| BRENDA CHILTON, acting in her capacity as the Benton County Auditor, | |
| Respondent. | |

PER CURIAM[1]— As explained below, the resolution favored by the majority of the court is to affirm the dismissal of the writ of mandamus.

Washington law allows qualified voters in municipalities that have adopted a charter to petition to amend that charter. RCW 35.22.120. When a requisite number of qualified voters petition for the adoption of a charter amendment, the municipality shall submit the amendment to the voters "at the next regular municipal election, occurring thirty days or more after said petition is filed." *Id.* The phrase "next regular

---

[1] This court may issue a per curiam opinion summarizing the votes of the justices in a plurality decision, preceding the lead opinion. WASH. SUP. CT. INTERNAL R. II-8(B).

municipal election" has not been defined by the legislature. *See* ch. 35.22 RCW; Title 29A RCW.

A Better Richland, a political action committee, submitted a petition for a charter amendment to the county auditor in October 2024. Benton County Auditor Brenda Chilton decided to place the amendments before the voters at the November 2025 election.

A Better Richland petitioned the Benton County Superior Court for a writ of mandamus directing the county auditor to place the charter amendment on the ballot to be voted on at a special election to be held in either February 2025 or April 2025. The superior court judge denied the writ, and A Better Richland successfully sought direct review at the Washington State Supreme Court.

The court unanimously holds that this case is now moot, and the case should be dismissed. However, the court unanimously holds that an exception to mootness applies and in three separate opinions proceeds to address the proper interpretation of RCW 35.22.120 as an issue of continuing and substantial public interest.

In the lead opinion, three justices—Justice Whitener, Chief Justice Stephens, and Justice Madsen—would hold that the phrase "next regular election" under RCW 35.22.120 can include both special and general elections. In the concurrence in part, three justices—Justice González, Justice Johnson, and Justice Montoya-Lewis—join the lead opinion on this issue, representing a majority view that the phrase "next

regular election" under RCW 35.22.120 can include both general and special elections.

The concurrence in part would also hold that under the facts of this case, the petitioner has not identified a ministerial, nondiscretionary duty requiring the county auditor to hold a special election and therefore mandamus will not lie. Three justices in dissent—Justice Mungia, Justice Gordon McCloud, and Justice Pro Tem. Yu— agree with the concurrence, representing a majority view of the court that mandamus will not lie in this case. However, the dissent disagrees with the lead opinion and the concurrence in part that the next regular municipal election includes special elections.

Accordingly, the dismissal of the writ of mandamus is affirmed.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

JANUARY 29, 2026

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 29, 2026

SARAH R. PENDLETON
SUPREME COURT CLERK

**IN THE SUPREME COURT OF THE STATE OF WASHINGTON**

| | |
|---|---|
| A BETTER RICHLAND, a political action committee, registered under laws of Washington State, | No. 103715-5 |
| Petitioner, | En Banc |
| v. | |
| BRENDA CHILTON, acting in her capacity as Benton County Auditor, | Filed: January 29, 2026 |
| Respondent. | |

WHITENER, J. – This is a direct review of a trial court order that denied A Better Richland's petition for a writ of mandamus to place a proposed city charter amendment on a special election ballot. Clerk's Papers at 46. The statute that governs petitions for submission of charter amendments is RCW 35.22.120. It states that "amendment[s] shall be submitted to the voters at the *next regular municipal election*, occurring thirty days or more after said petition is filed." *Id*. (emphasis added). What is unclear is whether "next regular municipal election" refers exclusively to special elections or to general elections or to both types of elections.

A Better Richland argues the statute includes special elections, whereas the county auditor, Brenda Chilton, argues the statute refers only to general elections. We hold that the statute includes both special elections and general elections.

FACTUAL AND PROCEDURAL BACKGROUND

A Better Richland (ABR) is a political action committee formed with the purpose of enacting a charter amendment by citizen petition pursuant to RCW 35.22.120. ABR consists of registered voters and residents in Richland, Washington. In October 2024, ABR submitted a petition for a charter amendment (Petition), which proposed to have five city council members who would be elected by district and two who would be elected at large, as opposed to the current practice where all seven council members in Richland are elected at large. The parties do not dispute that the Petition is valid, as it contains the requisite numbers of verified signatures by Richland voters. Chilton, as auditor for Benton County, is responsible for putting the charter amendment on the ballot. After receiving the Petition, Chilton asserted that the amendment should be placed on the ballot for the next "general" election, which was scheduled for November 4, 2025. ABR argued that the amendment should be placed on the ballot for the next "special" election, held in February or April 2025. ABR filed a petition for a writ of mandamus in Benton County Superior Court, requesting the charter amendment be put to the voters on either the February

or the April 2025 special election. The trial court denied the petition for a writ of mandamus and ordered that the proposed amendment be included in the general election on November 4, 2025.

ISSUE

Does "next regular municipal election" in RCW 35.22.120 refer to general elections, special elections, or to both types of elections?[1]

STANDARD OF REVIEW

This case requires us to interpret the phrase "next regular municipal election" in RCW 35.22.120. Issues of statutory interpretation are reviewed de novo. *City of Pasco v. Pub. Emp't Rels. Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). In interpreting statutes, our "fundamental objective is to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id*. at 9-10. In determining plain meaning, courts may look at "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the

---

[1] The concurrence in part would have us reach the separate issue of whether the writ of mandamus was properly brought by the petitioners. (González, J.). On this now moot case, we declined to reach this issue that was not fully briefed by the parties.

provision in question." *Id*. at 11. We read statutes as a whole and "should not interpret statutes in a way that would render any language 'meaningless or superfluous.'" *Wash. State Ass'n of Counties v. State*, 199 Wn.2d 1, 12-13, 502 P.3d 825 (2022) (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). Undefined terms in a statute are given their ordinary meaning. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). If a statute is subject to two or more reasonable interpretations, it is ambiguous and courts may consider legislative history and the "circumstances surrounding the enactment of the statute." *Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 312, 268 P.3d 892 (2011). Courts should "'avoid a literal reading if it would result in unlikely, absurd or strained consequences'" because the statute's purpose "'should prevail over express but inept wording.'" *Bearden v. City of Ocean Shores*, 5 Wn.3d 1, 10, 570 P.3d 684 (2025) (quoting *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)).

ANALYSIS

The issue of whether the city charter amendment ABR submitted may be placed on the special election ballot is now moot. The special election dates for 2025 occurred in February and April 2025. Nevertheless, this issue is a matter of continuing and substantial public interest, and we will decide the merits. Generally,

this court will not consider "cases that are moot or present only abstract questions." *State v. Beaver*, 184 Wn.2d 321, 330, 358 P.3d 385 (2015). An issue is moot if "a court can no longer provide effective relief." *AURC III, LLC v. Point Ruston Phase II, LLC*, 3 Wn.3d 80, 86, 546 P.3d 385 (2024). However, "[e]ven if a case becomes moot, the court has the discretion to decide an appeal if the question is one of continuing and substantial public interest." *Beaver*, 184 Wn.2d at 330.

This case presents an issue of continuing and substantial public interest as county auditors need clear guidance on how to place city charter amendments on county election ballots, an issue that is likely to recur as city charter amendments are an important feature of the initiative and referendum powers under Title 36 RCW. *In re Marriage of Horner*, 151 Wn.2d 884, 892, 93 P.3d 124 (2004). Although the issue in this case is moot, we exercise our discretionary powers to review this case.

The parties agree that the operative statute here is RCW 35.22.120, which reads in full:

> **Petition for submission of charter amendment.** On petition of a number (equal to fifteen percent of the total number of votes cast at the last preceding general state election) of qualified voters of any municipality having adopted a charter under the laws of this state, asking the adoption of a specified charter amendment, providing for any matter within the realm of local affairs, or municipal business, the

said amendment shall be submitted to the voters at the next regular municipal election, occurring thirty days or more after said petition is filed, and if approved by a majority of the local electors of the municipality voting upon it, such amendment shall become a part of the charter organic law governing such municipality.

The phrase "regular municipal election" is not defined in the Richland City Charter (Charter). The Charter states that "[a]mendments to this Charter may be submitted to the registered electors by the Council or by petition of the electorate in the manner provided by the constitution or laws of the state." RICHLAND CITY CHARTER art. VIII, § 8.08.

The plain language of "next regular municipal election" in RCW 35.22.120 includes special elections. The Revised Code of Washington contains no definition for "regular municipal elections" or for "regular elections" or "municipal elections." The closest statutory definitions we have are contained in Title 29A of the RCW covering elections, which defines "elections," "general elections," and "special elections." The statutory definitions of each are as follows:

- "'Election' when used alone means a general election except where the context indicates that a special election is included. 'Election' when used without qualification does not include a primary." RCW 29A.04.043.
- "'General election' means an election required to be held on a fixed date recurring at regular intervals." RCW 29A.04.073.

- "'Special election' means any election that is not a general election and may be held in conjunction with a general election or primary." RCW 29A.04.175.

Title 29A RCW also specifies that all city, town, and district general elections shall be held in November in odd-numbered years. RCW 29A.04.330(1). Special elections, in contrast, may be called by the relevant local authority and held in February or April, or in conjunction with August primaries or November general elections. RCW 29A.04.330(2), .311.

ABR argues that the plain language of "next regular municipal election" includes special elections. ABR acknowledges that nowhere in the Revised Code of Washington is there a definition for "regular municipal election." ABR argues that the statutory definitions of "election" and "special election" in Title 29A RCW indicate that the phrase "next regular municipal election" must include special elections. "Election" is defined by statute: "'election' when used alone means a general election except where the context indicates that a special election is included." RCW 29A.04.043. The word election in "next regular municipal election" in RCW 35.22.120 is not used alone. The word election appears after the words "next regular municipal." Therefore, the phrase "next regular municipal election" does not refer to general elections and must refer to special elections. This reading is bolstered

by ABR's contention that special elections by definition serve as a "catchall" for "any election that is not a general election." "Special elections" are defined as any election that is not a general election and may be held in conjunction with a general election or primary. RCW 29A.04.175.

In addition, ABR contends that a separate provision, RCW 35.22.180, indicates that .120 includes a special election. RCW 35.22.180 states, "The election of the board of freeholders and that upon the proposition of adopting the proposed new, altered or revised charter, may be general or special elections." This provision refers to the process of petitioning for a new charter via the election of a board of freeholders. This is a separate petitioning process from the petition ABR brings under RCW 35.22.120 for charter amendments.

ABR contends that requiring multiple elections in a city to pass before an otherwise validly submitted petition for a city charter amendment can be placed on the ballot frustrates the object of making citizen petitions for charter amendments a straightforward and timely process. ABR argues that RCW 35.22.900 supports a liberal construction of RCW 35.22.120, which requires reading "next regular municipal election" to include special elections. RCW 35.22.900.

Benton County Auditor Chilton, in response to ABR's assertions, argues that the plain language of the phrase "next regular municipal election" in RCW 35.22.120 requires charter amendments be placed on the next general municipal election, as those are the only regular elections held at the municipal level. Without citations, Chilton defines "next" as "first in time," "regular" as "recurrence at some interval," and "municipal" as the "qualifier as to the type of election." Resp't's Br. at 12-13. Chilton argues that the municipality at issue here, a first-class city, already has proscribed a regularly recurring general election, which is held in November in odd-numbered years. RCW 29A.04.321(1), .330(1). Chilton points out that special elections may be called by the county auditor upon resolution tendered by the governing body of the city, however those conditions are not present here. RCW 29A.04.330(2). Essentially, Chilton's position is that general elections are the only regularly held elections in first-class municipalities, therefore the next regular municipal election can refer only to general elections.

Chilton argues that construing "next regular municipal election" to refer only to general elections best harmonizes with the definitions of "election," "general election," and "special election" in Title 29A RCW. Resp't's Br. at 14. She argues that we should start with the presumption that when the word "election" is used in the statute, it refers to "general elections." *Id*. Since the definition of "general

election" is marked by its fixed regularity, whereas the definition of "special election" is marked by its "flexible" nature, the phrase "next regular municipal election" can refer only to general elections. *Id*. at 15-16.

A plain language interpretation of RCW 35.22.120 supports this court holding that the phrase "next regular municipal election" refers to the next municipal election, whether that is a special election or a general election. The statutory definition of "election" when used alone means a general election except where the context indicates that a special election is included. "Election" when used without qualification does not include a primary. RCW 29A.04.043. It is undisputed that "election" is not used alone in RCW 35.22.120. The next question therefore is whether "context indicates that a special election is included." *Id*. Here, the context indicates that special elections are included because the statute refers to "municipal elections," which by statute includes both general and special elections.

The phrase "municipal elections" falls under RCW 29A.04.330. In determining its plain meaning, courts may look at "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn, LLC*, 146 Wn.2d at 11. Under RCW 29A.04.330, the statutory provision covering municipal elections provides for *both* general and special elections. Chilton's argument that "next regular municipal election" must

refer only to general elections because the only regular form of municipal elections in Richland is general elections ignores the fact that the statute governing municipal elections, RCW 29A.04.330, provides for both general and special elections, without qualification as to whether one type of election is "regular" or not. Finding no support in the statutory scheme or in case law that "municipal election" excludes special elections, a plain reading of the statute supports ABR's contention that .120 includes special elections.

Furthermore, contrary to Chilton's argument, the plain language of "regular" in "next regular municipal election" in RCW 35.22.120 does not automatically exclude special elections. Chilton is correct that general elections are marked by their regularity in terms of scheduling, whereas special elections are not always called for in a given year. RCW 29A.04.330. However, the phrase "regular election" as used in other sections of Title 35 RCW (covering first-class cities) indicates that it does not exclude special elections. A review of related statutes can disclose legislative intent about the provision in question. *Campbell & Gwinn, LLC*, 146 Wn.2d at 11. For example, under RCW 35.22.235 and .245, the statutes governing the election of mayors and council members in first-class cities, states, "All regular elections … shall be held biennially as provided in RCW 29A.04.330." As discussed above, RCW 29A.04.330 is the statute governing municipal elections which

provides for both general and special elections. Read together, the legislature's use of the word "regular" in .235 and .245 and its immediate reference to RCW 29A.04.330, which covers both general and special municipal elections, indicate that the legislature did not intend for "regular" to exclude any one form of municipal elections.

The phrase "regular election" as used in other parts of Title 35 RCW indicates that the legislature did not intend for "regular" to mean "general." Under RCW 35.17.020, the statute governing elections for commission forms of government reads, "All regular elections … shall be held quadrennially in the odd-numbered years on the dates provided in RCW 29A.04.330," and "regular elections … shall be held biennially at municipal general elections." The statute makes specific reference to municipal general elections, suggesting that if the legislature intended for "next regular municipal election" in RCW 35.22.120 to refer only to general municipal elections, then it would have said so. Another example is RCW 35.23.850, the statute governing the division of second-class code cities into wards. The statute distinguishes between the "next regular election," "municipal general election," and "general election," suggesting the legislature did not intend to conflate "regular election" with "general election." RCW 35.23.850. An additional example is RCW 35.23.148, the statute governing the process for combining the offices of the

treasurer and the clerk in a second-class city. This statute reads, "[T]he mayor shall appoint a treasurer and clerk who shall serve until the next regular municipal general election." RCW 35.23.148. Again, the legislature's decision to add the word "general" indicates that if the legislature intended to limit RCW 35.22.120 exclusively to general municipal elections, it would have explicitly done so. The mere use of the word "regular" in the phrase "next regular municipal election" in RCW 35.22.120 does not suggest that the legislature intended to exclude special elections.

A plain language reading of RCW 35.22.120 indicates that "next regular municipal election" refers to the next municipal election, whether that is a general or a special election. Municipal elections by statute include both general elections and special elections without qualification as to whether one is a regular election or not. RCW 35.22.120; RCW 29A.04.330.

CONCLUSION

We hold that the phrase "next regular municipal election" in RCW 35.22.120 includes both special elections and general elections. We vacate the superior court's order and dismiss the case.

_____
Whitener, J.

WE CONCUR.

_____
Stephens, C.J.

_____

_____

_____
Madsen, J.

_____

_____

No. 103715-5

GONZÁLEZ, J. (concurring in part)— Our state constitution vests

considerable power in the hands of those closest to the people: local government.

WASH. CONST. art. XI. Those who live in large, first-class cities have particular

power to craft their own form of government. The reason was clear: "[T]he

purpose and intent of the constitution was to give to cities of the first class, having

the right to adopt their own charters, the fullest power in that respect, provided

only that their acts shall be consistent with and subject to the constitution and

general laws." *State ex rel. Hindley v. Superior Ct.*, 70 Wash. 352, 355, 126 P. 920

(1912). This includes the power to set general rules for elections, as long as those

rules are consistent with state law.

A political action committee, A Better Richland, filed a petition for a

proposed city charter amendment with sufficient signatures to demand a vote of the

people. The legislature directs that the auditor "shall" submit the amendment "to

the voters at the next regular municipal election." RCW 35.22.120. The local

1

home rule charter does not define what that means in Richland and in that absence, the Benton County auditor and the committee disagreed when the election should be held.

A Better Richland sought a writ of mandamus against the auditor to have the amendment placed on either the February or April 2025 special election ballot. The trial court denied the writ of mandamus and concluded the amendment must be placed on the November 2025 general election ballot.

I agree with the lead opinion that this moot case should be reviewed to provide guidance in future cases. Lead opinion at 5. I also agree with the lead opinion's holding that the phrase "next regular municipal election" can include both special elections and general elections. Lead opinion at 13. Therefore, I concur with the lead opinion's substantive legal conclusion.

I write separately to address the availability of mandamus under these facts and would hold the trial court correctly denied the writ. A writ of mandamus "may be issued by any court . . . to compel the performance of an act which the law especially enjoins as a duty." RCW 7.16.160. It is a "rare and extraordinary remedy." *Colvin v. Inslee*, 195 Wn.2d 879, 890-91, 467 P.3d 953 (2020). It is "available only to compel an official to do a nondiscretionary (i.e., 'ministerial') act." *City of Seattle v. McKenna*, 172 Wn.2d 551, 555, 259 P.3d 1087 (2011). To

2

qualify, "[t]he mandate must specify the precise thing to be done." *Freeman v. Gregoire*, 171 Wn.2d 316, 323, 256 P.3d 264 (2011) (citing *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994)). It must define the duty with such particularity "'"as to leave nothing to the exercise of discretion or judgment.'" *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 599, 229 P.3d 774 (2010) (emphasis omitted) (quoting *State ex rel. Clark v. City of Seattle*, 137 Wash. 455, 461, 242 P. 966 (1926)). "Petitioners bear 'the "demanding" burden of proving all three elements justifying mandamus.'" *Colvin*, 195 Wn.2d at 894 (quoting *Eugster v. City of Spokane*, 118 Wn. App. 383, 403, 76 P.3d 741 (2003) (quoting *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 309, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989))). A Better Richland did not meet its burden here.

The Benton County auditor has a duty to conduct state and local elections "at the time, in the manner, and by the officials . . . as provided and required by the laws governing such elections." RCW 29A.04.025, .216. Richland is a first-class city in Benton County with a regularly recurring general election held in November in odd numbered years. RCW 29A.04.321(1)(a), .330(1).

Based on the plain language of RCW 35.22.120, the legislature permits proposed city charter amendments to be considered at special elections, even when the home rule charter does not identify a special election as an option for a charter

3

amendment.  Likewise, the constitution does not limit the submission of charter amendments initiated by the public to general elections.  *See* WASH. CONST. art. XI, § 10 ("Said elections may be general or special elections, and except as herein provided shall be governed by the law regulating and controlling general or special elections in said city."); *see also Hindley*, 70 Wash. at 354-55 (upholding charter that allows for submission of amendments at a special election).[1]  Critically, however, for the auditor to call a special election, the city council would generally need to enact a resolution, which did not occur here.  RCW 29A.04.330(2).

In the absence of a city council resolution or clarifying charter provision, A Better Richland has not identified a ministerial, nondiscretionary duty requiring the auditor to hold a special election.  The legislature did not provide for a specific type of "next" election in RCW 35.22.120.  *Cf. State ex rel. Linn v. Superior Ct.*, 20 Wn.2d 138, 155, 146 P.2d 543 (1944) (holding that a petition that could not be placed on a city general election ballot could still be submitted to the voters at some subsequent election); *City of Spokane v. Spokane Police Guild*, 87 Wn.2d 457, 465, 553 P.2d 1316 (1976) ("The word 'shall' in a statute may be construed as

---

[1] In contrast, when the municipality's legislative body seeks to amend the charter, it must be submitted to the electors at the general election.  WASH. CONST. art. XI, § 10 ("Such charter may be amended by proposals therefor submitted by the legislative authority of such city to the electors thereof at any general election after notice of said submission published as above specified, and ratified by a majority of the qualified electors voting thereon.").

directory rather than mandatory depending upon legislative intent." (citing *Seattle v. Reed*, 6 Wn.2d 186, 188, 107 P.2d 239 (1940); *Spokane County ex rel. Sullivan v. Glover*, 2 Wn.2d 162, 169, 97 P.2d 628 (1940))).  Instead, the legislature intended to give municipalities discretion, including allowing them to define "regular municipal election" in their own charters.  *See* lead opinion at 6 (explaining the phrase "regular municipal election" could have been defined in the Richland City Charter, or elsewhere, but it was not).[2]

I join the lead opinion's interpretation of RCW 35.22.120: Even when a charter does not identify a special election as an option for a charter amendment, the legislature permits municipalities to submit proposed city charter amendments initiated by the public to the voters in a special election. RCW 35.22.120; *see also* WASH. CONST. art. XI, § 10.  Therefore, I respectfully concur in the lead opinion's substantive legal conclusion.   In addition, I would hold that A Better Richand has not demonstrated that the Benton County auditor had a ministerial, nondiscretionary duty to place the proposed city charter amendment on a special

---

[2] The dissent would narrowly construe the phrase "next regular municipal election" in RCW 35.22.120 to exclude special elections.  Dissent at 4 (Mungia, J.) (defining "next regular municipal election" as "the nearest, recurring election that happens at a fixed time.").  The legislature provides that special elections "shall be held on" fixed days "as decided by the governing body."  RCW 29A.04.330(2).  I am not persuaded that the legislature intended to limit a city's ability to have the voters consider a proposed charter amendment at a special election.

election ballot.  Therefore, I would reverse the trial court's ruling to the extent it held that the "next regular municipal election" was necessarily November 2025 and affirm its denial of the writ.

With these observations, I concur in part.

González, J.

Johnson, J.

Montoya-Lewis, J.

6

No. 103715-5

MUNGIA, J. (dissenting)—When interpreting a statute, we give undefined terms their ordinary meaning. The ordinary meaning of "regular" does not include "special." Instead, "regular" denotes something occurring at a set time or date, e.g., we have our regular board meetings the first Monday of each month. In contrast, "special" denotes something out of the ordinary, e.g., in addition to our regular monthly board meetings, we will be holding a special board meeting the second Tuesday of this month.

The statute at issue here is RCW 35.22.120. That statute sets forth the procedure when someone wants to submit a petition to amend a municipal charter. When the proponent has gathered the required signatures and submits the petition, the petition will be placed on the ballot for "the next regular municipal election."

Here, Brenda Chilton, the Benton County auditor, placed the ballot measure submitted by A Better Richland (ABR) on the ballot for the next general, not special, election. ABR argued that Auditor Chilton misinterpreted the statute and sought a writ of mandamus that would require the auditor to place the petition on the next special election ballot. The trial court rejected ABR's argument and determined the petition should be

placed on the ballot for the next general election and denied ABR's request for a mandamus.

As a preliminary matter, this case is moot. ABR can no longer receive the relief it requests—to have the proposed charter amendment placed on the February or April 2025 special election ballot. I agree with the lead opinion that this case presents an issue of continuing and substantial public interest.

However, I also agree with Justice González that the trial court correctly denied the writ. ABR did not meet its burden of proving the elements required to justify a writ of mandamus.

While I would affirm the trial court's denial of the writ, I write separately to address my disagreement with the lead opinion and concurring justices' interpretation of RCW 35.22.120. The lead opinion and the concurring justice hold that "next regular municipal election" in RCW 35.22.120 may include special elections. However, their interpretation does not use "regular" as it is ordinarily used in everyday language. A "special" election, by definition, is not a "regular" election. A "special" election is an irregular event. It is something out of the ordinary. Indeed, looking at the phrase "next regular municipal election" within the context of the statute, the lead opinion and concurring opinions' interpretation simply does not make sense.

Giving the phrase "next regular municipal election" its ordinary meaning, and examining the phrase in context, the "next regular municipal election" does not include special elections. Accordingly, I respectfully dissent.

2

I.   UNDER THE PLAIN LANGUAGE OF RCW 35.22.120, "NEXT REGULAR MUNICIPAL
ELECTION" DOES NOT INCLUDE SPECIAL ELECTIONS

We review issues of statutory interpretation de novo. *City of Pasco v. Pub. Emp't Rels. Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). Our role is to ascertain and carry out the legislature's intent, giving effect to a statute's plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We first look to the text of a statute to determine its plain meaning. *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002). Terms that are not statutorily defined are given their ordinary meaning. *Id.* We also look at the context of the statute, related provisions, and the statutory scheme to discern a statute's plain meaning. *Campbell & Gwinn*, 146 Wn.2d at 10-12. Additionally, all language in the statute must be given effect. *State v. Roggenkamp*, 153 Wn.2d 614, 624, 106 P.3d 196 (2005). No portion should be rendered meaningless. *Id.*

The phrase "next regular municipal election" is not defined by statute or by Richland's city charter.

While "election" is statutorily defined, its definition does not help in determining the meaning of "next regular municipal election." RCW 29A.04.043 provides, "'Election' when used alone means a general election except where the context indicates that a special election is included." The statute does not specify how to interpret the term "election" when it is used with qualifications, such as "next regular municipal."

Because the statute does not define "next regular municipal election," the court should look to the ordinary meaning and statutory context to determine legislative intent.

3

1. *The Ordinary Meaning of "Next Regular Municipal Election" Does Not Include Special Elections*

The ordinary meaning of "next" is "in the time . . . or order nearest or immediately succeeding." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/next (last visited Jan. 26, 2026). "Regular" means "recurring, attending, or functioning at fixed, uniform, or normal intervals." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/regular (last visited Jan. 26, 2026). These terms are modifiers for "municipal election." Therefore, the "next regular municipal election" referenced in RCW 35.22.120 must be the nearest, recurring election that happens at a fixed time. As discussed below, municipal special elections are not recurring elections that happen at a fixed time. They are not regular elections by their ordinary meaning.

Related statutory provisions also reveal that regular municipal elections do not include special elections.

2. *The Definitions of "General" and "Special" Elections Demonstrate That Special Elections Are Not Regular Elections*

"General elections" are elections "required to be held on a fixed date recurring at regular intervals." RCW 29A.04.073. General elections are regular by definition. "Special elections" are defined as something other than a general election: "any election that is not a general election and may be held in conjunction with a general election or primary." RCW 29A.04.175. Because "special elections" are defined as elections that are not a general election, they are not "required to be held on a fixed date recurring at

4

regular intervals." RCW 29A.04.073. These definitions reinforce that regular municipal elections do not include irregular special elections.

Additionally, the legislature's use of "regular" in the definition of general election and in the phrase "regular municipal election" shows the term has the same meaning in both contexts: that the election is fixed and recurring. We have consistently held that a word has the same meaning when it is used in different provisions legislating on the same subject matter. *Champion v. Shoreline Sch. Dist. No. 412*, 81 Wn.2d 672, 676, 504 P.2d 304 (1972). Nothing in the context or text of RCW 35.22.120 demonstrates that "regular" means anything other than a fixed, recurring election. Indeed, the word regular is never used to refer to special elections. This further establishes that special elections are not included in the term "next regular municipal election" contemplated by RCW 35.22.120. Provisions relating to municipal elections also reinforce that municipal special elections are not regular elections.

3. *Statutory Provisions Discussing Municipal Elections Reveal Municipal General Elections Are Regular, While Municipal Special Elections Are Not*

Municipal elections include city elections like Richland's, a first-class city in Benton County. *See* RCW 29A.04.321(1)(a), .330(1). The statute governing municipal elections provides that all city general elections "shall be held . . . on the first Tuesday following the first Monday in November in the odd-numbered years." RCW 29A.04.330(1). In contrast, special elections are to be called by the county auditor when the auditor receives a request from a locality's governing body. RCW 29A.04.330(2).

5

The governing body has the discretion to set a special election date from several dates listed in the statute. *Id.*

In sum, municipal general elections are always held at a recurring, fixed time. They are regular. In contrast, municipal special elections are held only if requested and are scheduled at the governing body's discretion. They are irregular. Therefore, statutory context demonstrates municipal special elections are not regular municipal elections.

II. THE STATUTORY CONTEXT DOES NOT INDICATE THAT "NEXT REGULAR MUNICIPAL ELECTION" AS USED IN RCW 35.22.120 INCLUDES SPECIAL ELECTIONS

The lead opinion holds that the statutory context indicates special elections may be "regular municipal elections" because (1) municipal elections include both general and special elections and (2) the use of the phrases "regular election," "municipal general election," and "general election" elsewhere in Title 35 RCW indicates special elections are included. Lead opinion at 11-12. The lead opinion's conclusion does not withstand an examination of its analysis.

*1. Special Elections Are Not Regular Municipal Elections*

First, the use of the term "municipal election" in RCW 35.22.120 does not indicate that both general and special elections are regular municipal elections. The lead opinion's holding that it does ignores the phrase's plain meaning and renders the term "regular" meaningless.

6

As discussed above, while municipal elections can be general or special, they are not both regular elections. By definition, municipal special elections are irregular. Concluding that municipal special elections can be considered regular merely because they are also municipal is incorrect.

Next, given that special elections are irregular, interpreting regular municipal election to include special elections renders the term "regular" meaningless. The lead opinion's holding that regular municipal elections may include special elections goes against our long-standing rules of statutory interpretation—we cannot interpret the statute to render the term "regular" meaningless. *Roggenkamp*, 153 Wn.2d at 621.

2. *The Use of Similar Phrases in Title 35 RCW Does Not Support That Special Elections Are Included in RCW 35.22.120*

Second, while the lead opinion correctly notes that some provisions in Title 35 RCW reference general and regular elections distinctly, this does not support that regular municipal elections include special elections. Lead opinion at 12-13. Instead, these distinctions reinforce that the legislature left room for municipalities to establish types of regular elections other than general elections. *See* concurrence in part at 5 (González, J.). A prime example is primary elections. For instance, Richland's charter provides, "There shall be regular primary and general municipal elections biennially on the days provided by law in each even numbered year and such special elections as the Council shall provide." RICHLAND CITY CHARTER art. VII, § 7.01; *see also* RCW 29A.04.311 (establishing that primaries for general elections are to be held the first Tuesday of the preceding August). The lead opinion is correct that "[t]he phrase 'regular election' as

7

used in other parts of Title 35 RCW indicates that the legislature did not intend for 'regular' to mean 'general.'" Lead opinion at 12. However, it incorrectly relies on this distinction to conclude that regular elections may therefore include special elections.

Instead, the only logical conclusion is that regular elections are elections that occur regularly. This includes general elections and other elections held at recurring fixed times, such as primaries. Regular elections do not include special elections that are, by definition, inconsistently and sporadically held. *See* RCW 29A.04.175; *see also* RICHLAND CITY CHARTER art. VII, § 7.01 (establishing that special elections are distinct from regular primary and general elections and are held only when council decides). Therefore, "next regular municipal election" as used in RCW 35.22.120 cannot include special elections.

III. CONCLUSION

When a statute is unclear because a statutory term is not defined, courts must give the term its everyday meaning. When a phrase is used, courts must give the entire phrase its ordinary meaning.

Here, "next regular municipal election" is not defined in the statute or Richland's city charter. This court's task was to give the term its ordinary meaning. By definition, a "special election" is not a regular election. It is just that—special. A special election has to be requested. The governing body, using its discretion, selects a date from a list of available dates. A special election is not a regular election.

8

I would affirm the dismissal of the writ of mandamus. Addressing the merits,

"next regular municipal election" in RCW 35.22.120 does not include special elections.

Accordingly, I respectfully dissent.


_____
Mungia, J.

_____
Gordon McCloud, J.

_____
[ w'LROVO